Hoitt v. Holcomb.

GORHAM W. HOITT *v.* ENOCH HOLCOMB *& als.*

In debt on bond given to the sheriff to indemnify him against liability on account of his deputy, the plaintiff to a plea of release replied,—1st. Fraud, without specifying the particulars. 2d. False and fraudulent representations that there had been no breach of the condition of the bond ; that the deputy was not in arrear, but had paid up promptly, so that it would be safe for the plaintiff to give the release, on which issues were taken. All the allegations of the replications were proved except that there was no evidence of a technical breach of the condition of the bond.— *Held,* that this was unnecessary to maintain the issue on the part of the plaintiff on either of the replications.

Where one of the sureties on such bond applied to the plaintiff to release him therefrom, as a matter of favor and convenience to the surety, and, in order to induce him to give the release, falsely and fraudulently made the foregoing representations, and at the same time stated that he had made enquiries on the subject of the official liabilities of the deputy at the offices of the attorneys at law in his vicinity, and had learned the facts to be as represented — *held,* that the plaintiff could avail himself of the imposition practiced upon him to avoid a release given on the faith of the representations, and that this was not a case for the application of the doctrine that where the party imposed upon has equal means of knowledge, it is his folly to trust to the representations of the other party.

VOL. XXXII. 13

Hoitt *v.* Holcomb.

If it were a case of that character, *semble*, that the plaintiff was not bound to resort to the attorneys referred to, nor to the deputy himself, for information on the subject, before giving credit to the representations, as the rule in those cases, where the doctrine is to be applied, is only that the party imposed upon shall give reasonable and proper attention to such means of knowledge as may be within the reach of his observation and judgment, and which he cannot overlook or disregard without negligence and indiscretion.

The relation of a sheriff to his deputies, though in law such that he is liable for their defaults without notice, is not such that he is presumed in law to have knowledge of those defaults, so as to preclude him from setting up such fraud in avoidance of a release so given.

A verdict will not be set aside on account of ambiguity in the instructions of the court, if it is apparent that the jury were not misled by it.

It will be presumed that the jury were not misled by a proposition contained in the instructions, which, when considered by itself, is susceptible of a construction that would render it erroneous, if, when considered in connection with the other parts of the charge, and in reference to the subject matter to which it was understood by the jury to relate, there could be no doubt that another meaning was intended, which would render it correct.

In a suit on such bond, conditioned to indemnify the plaintiff against all loss, damages, and costs on account of the acts and neglects of the deputy, he is entitled to receive as damages, in addition to the sums paid by him or his sureties on his official bond to the county, to satisfy judgments recovered against him for the defaults of the deputy and interest thereon, all such reasonable expenses as were incurred by him in and about the defence of the suits in which the judgments were rendered, including counsel fees and a reasonable compensation for his personal services ; and in the suit on the bond the same expenses and compensation for services, beyond the taxable costs, but not the costs or expenses incurred in a suit upon his official bond, brought to enforce payment of such judgment; and upon a judgment in favor of the sheriff for the penalty of the bond, execution will be awarded as well for the damages that may have accrued subsequent to the commencement of the suit upon the bond, as for those prior thereto.

DEBT on bond, given by Holcomb and the other defendants as to his sureties, to the plaintiff, as sheriff of the county, conditioned indemnify the plaintiff against all loss, damages and costs by reason of the acts or neglects of Holcomb in the office of deputy sheriff.

Plea, a release under the seal of the plaintiff, given on the 23d of November, 1847, to Montgomery, one of the defendants, discharging him from the bond and all liability thereon.

Replication 1. *Non est factum* as to said release, and issue thereon.

2. That the release was obtained by the fraud, covin and misrepresentation of Montgomery.

3. That the release was obtained by Montgomery by fraud in this; that on the 23d of November, 1847, Montgomery falsely and fraudulently represented to the plaintiff that Holcomb was not in default in his said office; that there had not been any breach of the condition of the bond; that he had paid over all moneys by him received as deputy of the plaintiff, and that the plaintiff would be safe in giving Montgomery the release; — whereas Holcomb had then committed divers breaches of the condition of the bond; had neglected to pay over large sums of money received by him on account of certain precepts in his hands, and by him levied, viz.: $261,51, received on the 2d of June, 1847, on an execution which issued upon a judgment rendered in the Court of Common Pleas in favor of the Strafford bank against one Pinkham; and $879,02, received on the 18th of May, 1847, on an execution which issued upon a judgment rendered in said court in favor of Hill & Co. against Wentworth; which said sums had never been paid over by Holcomb to any person entitled thereto, and that said release was delivered in confidence and by reason of said misrepresentations.

4. That the release was obtained by the fraud, covin and misrepresentation of Montgomery in this; that on the 23d of November, 1847, he falsely and fraudulently represented to the plaintiff, as set out in the third replication, omitting the specification of the particular executions and sums received thereon.

Rejoinder as to the second, third and fourth replications, traversing the same, and issues thereon.

Upon the trial the defendants, having introduced evidence to sustain the issue on their part on the replication of *non est factum* to the release, the plaintiff then introduced as witnesses Mary Abby Hoitt and Lucy Ann Hoitt, his daughters, who testified to what occurred on the 23d of November, 1847, between the plaintiff and Montgomery at the time when the release was given, and whose testimony was the only direct evidence upon the subject of the alleged false and fraudulent representations.

Mary testified that on that day Montgomery came to her father's house and said to him, " The paper you gave me this morning is not good for any thing without your seal, as the one we gave you is under seal.    I have got one made out under seal ;" and thereupon Montgomery handed to the plaintiff a paper which he appeared to read, and then said that he liked to oblige people if he could without injuring himself ; that Montgomery then said the plaintiff would be safe to sign it, as Holcomb was a prompt officer and paid up promptly, and that he (Montgomery) had inquired of all the lawyers (understood to mean all the attorneys at law at the Great Falls,) and there was nothing behind ; that the plaintiff then said if these were the facts he had no objection to signing the paper ; to which Montgomery replied that these were the facts, and thereupon the plaintiff signed the paper and delivered it to Montgomery.

Said Lucy testified that Montgomery said to her father that the paper which the plaintiff had given him that morning was good for nothing without a seal, as the bond they had given him was under seal ; that Montgomery handed the plaintiff a paper, which he read ; and, after reading, said he had no objection to signing if it would not injure himself, as he was willing to accommodate others if he could do so without injury to himself ; that Montgomery then said it would not injure him, as Holcomb was doing a good business ; that he (Montgomery) had been to all the lawyers' offices at Great Falls, and inquired, and he had learned that Holcomb was liked, and was not behind hand, but was a prompt officer, and had paid up promptly ; that the plaintiff then said if these were the facts, he was willing to sign the paper, as he always liked to accommodate, if he could do so without injuring himself : To which Montgomery replied that it would not injure him, as Holcomb was not owing, but was a prompt officer and paid up promptly ; that the plaintiff thereupon signed the paper, which was the release produced by the defendants, and delivered it to Montgomery.

The plaintiff then proved that in May, 1847, Holcomb, having in his hands to be levied the two executions, collected the

amounts thereof; that in January, 1848, suits were commenced by the creditors against the plaintiff as sheriff, for the defaults of Holcomb in not paying over the money so collected ; in which suits judgments were recovered against the plaintiff, and that notice of the pendency of the suits was seasonably given to Holcomb. There was no evidence of a demand made by either of the creditors upon Holcomb for the money. There was evidence in the case tending to show that Montgomery, at the time of making the representations relative to Holcomb's not owing or being in arrear, and to his having paid up promptly, knew that they were false, but there was no evidence as to whether he had or not obtained information of any of the attorneys at the Great Falls, or elsewhere, relative to Holcomb's affairs, nor whether he had or not made inquiries in relation thereto.

On the part of the defendants it was contended that upon this evidence the issues on the second, third and fourth replications were not maintained by the plaintiff, and moved for a nonsuit. A nonsuit was also moved on other grounds, which sufficiently appear in the opinion of the court.

The court ruled that the evidence was sufficient to be submitted to the jury, and instructed them that to maintain those issues the plaintiff must prove that the representations were false ; that Montgomery knew them to be false ; that they were in relation to material matters, touching the operation and effect of the release, or the subject matter upon which it might operate ; that they were such that the plaintiff had the right to rely upon them, either because they related to matters about which Montgomery had superior information, not equally accessible to the plaintiff; or because he claimed, and the plaintiff understood that he had obtained, information not known to the plaintiff, from a specified source, which, though equally accessible to the plaintiff, had not been resorted to by him ; and that the plaintiff, confiding in the representations, and believing them to be true, or not knowing or having reason to suppose or believe them to be false, was influenced by them to give the release ; and therefore, if the jury believed, upon the evidence, that Montgomery, at the time of ob-

taining the release, represented as facts that Holcomb was not in arrear, but had paid out all money received by him as deputy sheriff for which the plaintiff might have been liable, so as that it would be safe for the plaintiff to give the release; and if the jury further believed that these representations were false, and known by Montgomery to be false; and if, also, the jury believed that at the time of making them Montgomery also represented that he had made inquiry at the offices of the attorneys at law at the Great Falls, in relation to Holcomb's situation and affairs as deputy sheriff, and had there obtained knowledge on that subject, not known to the plaintiff; and if, also, the jury believed that the plaintiff relied upon these representations, believing them to be true, or not having any reason to suppose or believe them to be false, and was induced by them to give the release, then the jury should return their verdict upon the issues on the second, third and fourth replications, for the plaintiff.

The counsel for the defendants requested the court to instruct the jury that if the plaintiff and Montgomery had equal means of knowing the true situation of Holcomb's affairs in his office, as deputy sheriff, or if the plaintiff might, by the exercise of ordinary care and diligence, have obtained equal knowledge on that subject with Montgomery, then no representations made by Montgomery in relation to that matter would be sufficient to avoid the release; but the court declined so to instruct the jury, to which the defendants excepted.

The jury returned a verdict for the defendants, as to the first issue on the replication of *non est factum* to the release, and for the plaintiff as to the other issues; which the defendants move the court to set aside, for error in the said rulings, instructions and refusals of the court.

Since the commencement of this suit other actions have been brought against the plaintiff for the defaults of Holcomb, in which judgments have been rendered against this plaintiff. Several of these judgments have been paid by the sureties of the plaintiff, on his official bond to the county, after suit brought and judgment recovered against the plaintiff and his sureties, for a

breach of the condition of said bond, in not satisfying and discharging the said judgments so recovered against him for the defaults of Holcomb.

In all the suits against the plaintiff for the defaults of Holcomb, seasonable notice was given of the pendency thereof to Holcomb, and the plaintiff devoted his time and services, and incurred expenses in and about the defence of those suits, beyond the amount paid by him as costs rendered in the judgments. The plaintiff claims that in awarding damages, if judgment is rendered on the verdict, such sum shall be rendered in damages as will indemnify him against all loss on account of said judgments, including all expenses properly incurred by him, and a reasonable compensation for his time and services in the defence of said suit, and also in the prosecution of this suit beyond the taxable costs therein.

*Marston,* and *C. H. Bell,* for the defendants.

I. The court should have ruled that the action could not be maintained on the evidence, and should have ordered a nonsuit.

1. The plaintiff's evidence does not support the second, third and fourth replications.

No breach of the condition of Holcomb's bond was proved, as alleged in said replications.

The release was executed November 23, 1847.

In May, 1847, Holcomb had collected the amounts of the two executions, and in January, 1848, suits were commenced against the plaintiff for Holcomb's default in not paying over the money so collected by the execution creditors; but up to November 23, 1847, the time when Montgomery's representations were made, it appears that no demand was made upon Holcomb for the money collected on said executions. By the law of New-Hampshire he had a right to retain said money until it was demanded of him; consequently, with regard to these executions, there was no breach of the condition of Holcomb's bond on the 23d of November, 1847. *Moody* v. *Mahurin,* 4 N. H. 296; Comp. Stat., N. H., p. 454, § 11.

2. The statements made by Montgomery to Hoitt were concerning a matter about which the latter had equal means of information with the former; and it was Hoitt's folly to act on the statements of one adversely interested.

It will not be contended that Hoitt had not as good means of information about Holcomb's affairs as Montgomery had. All the sources of information to which Montgomery had access were as open to Hoitt as to him. And in particular the specified sources of information (the attorneys at law in Great Falls,) could be examined by Hoitt as well as by Montgomery.

Hoitt also had means, from his official position, to *compel Holcomb* to disclose the condition of his business, which neither Montgomery nor any one else could have.

The very application of Montgomery to be released from the bond should have put Hoitt upon inquiry. He had no right to rely upon the mere assertions of a party obviously and deeply interested, when he could so easily have ascertained the truth of the matter.

The policy of the law in similar cases requires parties to use the means of information in their hands; and if they act without doing so, the law will not protect them from the consequences of their negligence.

A familiar example is the case of the sale of an article in which there is a patent defect. The purchaser cannot rescind the contract nor recover damages from the seller, notwithstanding the seller had warranted the article free from such defect.

In cases of contracts of sale, if a purchaser does not avail himself of the knowledge or means of knowledge open to him or his agents, he cannot be heard to say that he was deceived by the vendor's misrepresentations, for the rule is *caveat emptor*, and his loss is a result of his own folly and negligence. 1 Story's Eq. Juris. 228.

If the representation be of such a nature that the other party has no right to place reliance upon it, and it was his own folly to give credence to it, it will not avoid the contract. Ibid. 225.

In the case of *Harvey* v. *Young*, (Yelv. 21,) J. S. had a

term for years, and falsely affirmed it was worth £150 per year; and so J. D. gave him that sum for it; but J. D. could not get £100 for it, whereupon he sued J. S. for the deceit. Verdict for the plaintiff.

The judgment was arrested, as it was the defendant's bare assertion, and it was the plaintiff's folly to rely upon it.

Note 1. Where the affirmation is a nude assertion, that is, there is no warranty intended, and where the party deceived may exercise his own judgment, or where by common prudence he may ascertain the truth of the assertion, if he is deceived it is his own fault, and he has no remedy. See, also, Metcalf's notes to the same case. Yelverton 21, *et seq.*, Metc. Ed.

It is said by the plaintiff that the principle of law involved in the above authorities applies only to contracts of sale. But the following authorities show that the same doctrine is recognized as law in other cases than contracts of sale. *Bayley* v. *Merrill*, Cro. Jac. 386.

In this case the defendant hired the plaintiff to haul a load of merchandise for 2*s*. 8*d*. per hundred weight, affirming there was no more than eight hundred weight; and the plaintiff undertook to haul it, and killed several of his horses, there being in fact twenty-two hundred weight. Verdict for the plaintiff.

The defendant moved, in arrest of judgment, for that it was the plaintiff's own folly. It was a matter that lay in his own view, and if he doubted the weight he might have weighed it. He was not bound to give credence to another's speech; and, being his own neglect, he is without remedy; as if a man buys a horse with warranty of two eyes, when he has but one, he has no remedy, as the affirmation is not to be regarded, for the law gives no remedy for voluntary negligence.

The whole court was of opinion, although it was said there was apparent fraud in him who affirmed, and peradventure the plaintiff was a stranger and had no weights. But it was answered that it was his gross negligence. Judgment stayed. *Starr* v. *Bennett*, 5 Hill 303.

In this last case, a deputy sheriff who had returned an execu-

tion was inquired of by the plaintiff if the return was in due form of law, and the deputy, *intending to deceive,* answered that it was, whereupon the plaintiff filed a creditor's bill against the execution debtor, but lost the advantage thereof by reason of the insufficiency of the return.

Extract from the opinion of the court: " The return was not only in writing, but it was a matter of record, which was open to the inspection of every one, and the plaintiff should have examined for himself."

[The court recited and approved the case of *Bayley* v. *Merrel,* Cro. Jac. 386, and said :]

" This case is also reported in 3 Buls. 95. It was approved in *Pasley* v. *Freeman,* 3 D. & E. 51, where this action of deceit was carried to its utmost limit. *Ashhurst,* J., said the carrier had the means of obtaining certain knowledge in his own power, by weighing the goods ; and therefore it was a foolish credulity, against which the law would not relieve. Lord *Kenyon* took the same view of the question. It was distinguished from the case of a false affirmation concerning the solvency of an individual, because there the party is asking information which he can only acquire by consulting others. But here, taking the case in its most favorable aspect for the plaintiff, they are suing for a false affirmation concerning the contents of a written instrument, and when that instrument was completely within their reach. There is no precedent for such an action, and I trust there never will be ; men must give some attention to their own business, instead of questioning their neighbors and then suing them for deceit."

In this case there was judgment for the defendant.

There is a strong resemblance between the case of *Starr* v. *Bennett* and the case at bar.

In *Starr* v. *Bennett* the court held :

1. That notwithstanding the representations of the defendant were false and intended to deceive,

2. Yet that they related to a record which the plaintiff might have examined for himself ;

3. But as he did not examine the record,

4. Although he was induced by the representation to change his condition for the worse,

5. He was without remedy.

In like manner in the case at bar:

1. Admitting, *for this purpose*, the representations of Montgomery to be false, and intended to deceive,

2. Yet they related to matters and sources of information (viz., the lawyers at Great Falls,) which Hoitt might have examined for himself.

3. But as he did not examine them,

4. Although he was induced by the representations to execute the release,

5. He is without remedy.

3. This action cannot be maintained, because the law presumes and requires a sheriff to be acquainted at all times with the official situation of his deputies; and no misrepresentations on that subject can be said to operate as a fraud upon him.

The sheriff and his deputy are, as to the official acts of the latter, *identical. Ingersoll* v. *Sawyer*, 2 Pick. 276.

By the law of this State, the sheriff is liable for all the official doings of his deputy, *without notice*, and of course is taken to be thoroughly conversant with them.

Public policy, too, demands that the sheriff should always know the exact situation of his deputies, in their office. Whenever his deputy is falling in arrear, he is bound, by a just regard to the interests of those employing him, at once to use the power he has over his deputy, to protect them. He would be shamefully negligent if he suffered the deputy to go on and administer his office unfaithfully or recklessly, when he might so easily and effectually prevent it.

The law expects something more of a sheriff than that he shall appoint a sufficient number of deputies, and then sit down and allow them to proceed in their own fashion, without inquiry into their conduct. The public have an interest in the matter; they have a right to demand that their business shall be done by competent agents. The due administration of the law requires

that able and faithful ministers shall be appointed in every department; and it is one of the most important of a sheriff's duties to see that these requirements are amply and instantly fulfilled. He has no right to say, " I have my bonds from my deputies ; I am safe, and they may go on and involve suitors in endless litigation and expense, and bring the administration of justice into disrepute, and I shall not lift a hand to stop them."

On the contrary, he is to be vigilant, and to see to it that he appoints to office as his subordinates only those whom he knows to be honest and capable, and that he retains them in office not *an hour* after they cease to be so. If these are the duties of the sheriff, then he is bound to know the actual standing of every deputy at all times ; and he cannot call on the court here for aid, on the plea that he has neglected his duty in that respect.

II. The instructions of the court to the jury were incorrect.

The language of the case is, " The judge instructed the jury that if they believed that the plaintiff relied upon these representations of Montgomery, believing them to be true, or not having reason to believe them to be false, and was induced by them to give the release, then the jury should return their verdict for the plaintiff on the second, third and fourth replications."

This comprehends two propositions :

1. If the plaintiff relied upon the representations, *believing them to be true;* or,

2. If he relied upon the representations, *not having reason to suppose or believe them to be false;* in either case, &c., the verdict must be for the plaintiff.

The first of these propositions has already been considered incidentally, and need not be adverted to here.

The second proposition we maintain to be erroneous.

It does not imply that the plaintiff must have *believed* the representations to be true, but *excludes* that idea by the disjunctive *or* between the members of the sentence.

It can mean nothing but this : If the plaintiff relied upon the

representations of Montgomery, neither believing nor disbelieving them to be true, (that is, not having any opinion whether they were true or false,) and was induced by them to give the release, then he may avoid the release.

We understand that the law does not provide for the avoidance of deeds, except in the case of parties defrauded and deceived. A deed is a solemn instrument, not to be recalled or set aside upon slight grounds. It is only when one is tricked and cheated into executing a deed, that he is entitled to contest its validity. He must have been misled by false statements — statements that he believed to be true — before he can ask the court to decree his solemn act a nullity. If he runs the risk to act upon the statements, not believing them to be true, he must take what falls thereon. If this doctrine needs the support of authority, we refer the court to their own opinion in this case, as it is reported in 3 Foster 552.

In the case at bar, under the instructions of the court, the jury may have found that Hoitt acted upon the representations of Montgomery, without having any opinion as to their truth or falsity. He may have reasoned in this way : " I do not know whether what Montgomery says is true or false ; I have no belief about it, but I will sign the release ; then if it is for my interest to have it continue binding, I can do so ; if it is not for my interest, I will repudiate it, on the ground that the representations are false."

We do not understand the law to give him any such option. When he has coolly done the act, taking the chances of the statements being untrue, he must be held to his bargain, however sick he may afterwards be of it.

This action is in fact between two sets of sureties ; those on Hoitt's bond being plaintiffs, and those on Holcomb's bond defendants. This sufficiently appears from the case.

Have the plaintiffs any superior equity over the defendants— have they a title to call for any straining of the rules of law in their favor ? If Montgomery made false statements to Hoitt, they were concerning a matter which Hoitt was bound, as well

by common prudence as by his official duty, to know about; and Hoitt, by his neglect of duty in that respect, and by instantly discharging Holcomb from office, as soon as he learned the effect of the release, without consulting the other defendants, or giving them an opportunity to make arrangements with Holcomb to give up the money he had received, wrought an injury to the sureties of Holcomb that surely does not authorize him to ask any particular indulgence from jury or court.

*R. Eastman,* for the plaintiff.

The evidence was properly submitted to the jury. All the material allegations in the second, third and fourth replications were fully sustained by the proof, and the jury must have so found under the charge.

The notice to Holcomb of the pendency of the several suits against the plaintiff was sufficient, without proof of a demand on Holcomb for the money collected. But even if it did not appear that there had been a technical breach of the condition of the bond, yet it was proved and found by the jury that Holcomb was in arrear, not having paid out all moneys received by him for which the plaintiff might be liable.

The instructions to the jury, if in any respect erroneous, were too favorable to the defendants. The only point in which they are objected to by the counsel for the defendants, is in the alternative proposition, that if " the jury believed that the plaintiff relied upon the representations, believing them to be true, or not having reason to believe them to be false, and was induced by them to give the release, then their verdict should be for the plaintiff." The latter branch of the proposition is the stronger. By it not only is Hoitt required to believe the truth of the representations, but the jury are required to believe that he had no reason to believe otherwise. *Belief* is confidence, trust. *Reliance* is " rest of the mind, resulting from a *full belief* of the veracity or integrity of a person, or the *certainty* of a fact." To rely on representations is, therefore, to have full belief in their certainty. If the plaintiff thus relied on them, having no reason

to suppose or believe them to be false, and was induced by them to give the release, when in truth they were false, there can be no room to doubt he was misled and deceived.

The court properly declined to instruct the jury, as requested.

The misrepresentations charged come under the head of misstatements of facts, and, according to the opinion of the court in this case, when before them on a former occasion, at the December term, 1851, the instructions asked for would not apply to this case. Supposing the plaintiff and Montgomery to have had equal means of knowledge, and that the plaintiff might, by the exercise of ordinary care and diligence, have obtained the same information, yet the false representations made by Montgomery were intended, and did operate as an inducement to the plaintiff to forbear making the inquiries which, for his own security, he might otherwise have made. Even in cases of sale, where the article is present and visible to both parties, and the rule, *caveat emptor*, strictly applies, any artifice, trick or misrepresentation intended, and having the effect to divert the observation of the buyer, although in relation to open defects, is a fraud upon the purchaser, and will vitiate the contract. 2 Kent's Com. 484 to 487, and notes; 1 Story Eq. Ju., § 200, *et seq.*

The bond in suit was given to indemnify the plaintiff from all " loss, damages and costs " that might happen to him by reason of Holcomb's acts or neglects; and he is entitled to *full* indemnity. Unless he recovers all such reasonable sums as he has paid, or may be obliged to pay, including counsel fees in the suits against him for Holcomb's defaults, and in this suit, and a reasonable compensation for his personal services, he will not be indemnified.

The principles upon which the damages in such case should be assessed are fully considered in *French* v. *Parish*, 14 N. H. 496, and *Robinson* v. *Hill*, 15 N. H. 477.

*Christie*, on the same side.

I. The charge of the judge was correct; particularly so

when the decision of the court on the questions raised by the pleadings in this case, at the December term, 1851, is considered.

It was then held, first, that the general allegation of fraud was sufficient; and, second, that enough was alleged in the third and fourth replications to enable the plaintiff to maintain this action.

The allegations in the third and fourth replications are well sustained by the proof, and the charge of the judge as to what constitutes fraud, comes fully up to the utmost averment in the declaration. The doctrine, as established in *Pasley* v. *Freeman*, 3 T. R. 51, is in precise accordance with the instructions to the jury, and that case has been approved and confirmed in most of the courts in this country. 2 Smith's Leading Cases 101, and notes.

II. The instructions asked for by the defendants were properly refused. The principle of law involved in them applies only to contracts between principals where the doctrine, " *caveat emptor*," applies, and which are in no way analogous to this case.

Here the false representations are made by a third person in effect, and about a matter which is never included within the limits prescribed by *caveat emptor*, to wit, matters of opinion and false affirmations concerning visible defects. *Pasley* v. *Freeman*, 2 Smith's Leading Cases 56, and notes ; 2 Kent's Com. 489, (Ed. of 1849,) and notes ; 2 Stephens' Nisi Prius 1302, and note.

III. The plaintiff should recover under the bond, first, all the money he has been compelled to pay on the executions against him, and interest thereon ; second, all reasonable costs and expenses incurred by him in defending those suits, including counsel fees and personal services ; and, third, all the costs and expenses of this suit, also including counsel fees and personal service.

SAWYER, J. The pleadings in this case have, on a former occasion, passed under the examination of the court upon a demurrer to the second, third and fourth replications, as reported in 3 Foster 535. It was there decided that the particular facts

constituting the fraud relied upon to avoid the release need not be stated in the replication; that therefore the second replication, alleging that the release was obtained by the fraud, covin and misrepresentation of Montgomery, without specifying the acts in which the fraud consisted, was sufficient, and also that the third and fourth replications, setting out the particulars of the fraud, contained all the allegations necessary to charge fraud in that specific mode.

It is now contended that a nonsuit should have been ordered at the trial, as moved by the defendants on several distinct grounds.

The first is, that the evidence does not sustain the issues on the part of the plaintiff on the second, third and fourth replications.

The third and fourth replications allege, as one of the fraudulent representations made by Montgomery, that it was stated by him that there had been no breach of the condition of the bond; and the position taken by the defendants is, that the evidence does not show such breach, and that the falsity of the representation thus not being shown, those replications are not sustained by the proof.

If this position should be held to be correct, as to the third and fourth replications, still it cannot be taken as to the second issue. There the allegation is, that the release was obtained by the fraud, covin and misrepresentation of Montgomery, generally. To prove the fraud under this issue, it was immaterial whether there was or not evidence of a breach of the condition of the bond, or of a representation that there had been such breach. It was sufficient if the evidence shew a false and fraudulent representation in respect to any other material matter; and the matters about which the representations were proved to have been made, that Holcomb was not in arrear, but had paid up promptly, so that it would be safe for the plaintiff to give the release, were, in their character, as material as though they amounted to a technical breach. That the evidence was competent to be submitted to the jury upon this issue, on this view of the question,

cannot be doubted ; and the jury having found this issue for the plaintiff, it can avail nothing to the defendants 'if the evidence should be held to be insufficient to maintain the finding on the other issues.

But we think the evidence was competent to be submitted to the jury upon those issues. The allegations relative to the breach of the condition are not essential parts of the matter set out in avoidance of the release. They constitute one of the particulars in which the fraud is alleged to consist, but they are merely cumulative. Other instances of fraud are set forth, which, without the support of these allegations, may well stand as a complete specification of the fraud ; and as these allegations are of distinct facts and circumstances, not partaking of the character of descriptive averments, they may be considered as surplusage, and the failure of the evidence to prove them, as immaterial, so long as sufficient is proved of the other facts and circumstances, to constitute a case of fraud as alleged.

Another ground upon which it is contended the motion for a nonsuit should have been granted, is, that the representations made by Montgomery were in relation to matters about which the plaintiff had equal means of knowledge, and it was his folly to trust to them.

Instructions to the jury were asked for, based upon this view, which the court declined to give, and the same question is presented for consideration upon the exceptions taken to this refusal of the court, as upon the motion for a nonsuit on this ground.

This is not a case for the application of that doctrine. Where the representations are made in the course of a negotiation between the parties, in relation to the subject matter about which they are treating, with a view to a contract concerning the same subject matter to which the representations relate, a contract reciprocally beneficial, and founded on mutual considerations, as in the case of a purchase and sale, the question whether the party imposed upon by representations, made in the course of such negotiation, had equal means of knowledge, may be a material one. There, each party is negotiating for his own

Hoitt v. Holcomb.

advantage, and each is supposed to trust to his own knowledge, skill and diligence ; neither being considered as reposing confidence in the other. Indeed, they may be said, to some extent, to stand in the attitude of adverse parties, and are thereby put upon their guard against each other. And the care and attention which they are to exercise in the negotiation, to protect themselves from surprise and imposition, are to be tested by the principles involved in the maxim, *caveat emptor*. It may be credulity amounting to folly in either to trust to the representations of the other about the matter which is the subject of such negotiation between them, while at the same time either may be at liberty to confide in the same representations from a third person, not a party to the. negotiation, or to similar representations from the other party about some other matter, in relation to which they do not stand in that adverse position. Such is the case of *Medbury & als.* v. *Watson,* 6 Met. 246, where the false representations made by a third person, not a party to the negotiation, were held to be sufficient to support an action for the fraud, it being expressly stated by the court that, as between the parties to it, they would have been insufficient. In such cases the fraudulent representations would furnish ground for an action in favor of the party imposed upon, only in case it should be made to appear that he did not stand upon equal ground, by reason of his not having equal means of knowledge, or being prevented from using the means at hand by trick, or artifice, or the like. The distinction between cases of that character and the case at bar is marked and obvious. In the transaction which resulted in the plaintiff's giving the release, he was not negotiating a contract of the character and under the circumstances to place him in an attitude of opposition, like a vendee in treating for a sale, admonishing him to be upon his guard, and subjecting him to the same rule of vigilance as a vendee. That there are a variety of cases in which the party imposed upon is left without remedy, where the question of equal means of knowledge is no less immaterial than in this case, is undoubtedly true. But they depend upon principles not applicable to this case. Such

are the cases of *Vernon* v. *Keyes*, 12 East 631, which was a false representation of the *intention* of a third person. *Gallager & al.* v. *Burnel*, 6 Cowen 346 ; a promise to do a *future act*, at the time not intended to be performed, *Starr* v. *Bennett*, 5 Hill. 303, cited in the argument for the defendant ; said by the court to be a false assertion concerning a matter of *opinion*, or *judgment;* or, if considered as a false statement about a matter of fact, yet, being a matter appearing upon the *public records*, open to the inspection of every one ; for that reason, in principle, like the cases of false affirmation respecting titles to real property, of which it is said by Lord *Kenyon*, in *Pasley* v. *Freeman*, 3 T. R. 51, that " a person does not have recourse to common conversation to know the title of an estate which he is about to purchase ; he may inspect the title deeds, and he does not use common prudence if he rely on any other security." Of the same class with *Starr* v. *Bennett*, considered as a case of false assertion concerning a matter of opinion or judgment, is the case of *Harvey* v. *Young*, cited by the counsel for the defendants in Yelv. 21 ; in commenting upon which in *Pasley* v. *Freeman*, *Buller*, J., says, " the ground of the determination in that case was that the assertion was of a mere matter of judgment and opinion ; of a matter of which the defendant had no particular knowledge, but of which many men will be of many minds, and which is often governed by whim and caprice." So, too, the case of *Bayley* v. *Merrill*, Cro. Jac. 386 ; also reported in 3 Bulst. 95, cited for the defendants, if not considered as a case of false assertion concerning a mere matter of opinion, is, nevertheless, one concerning a fact of such character, that, like assertions relative to the public records, it was a want of common prudence to trust to it. The decision of the case is expressly placed by the court on the ground of " gross negligence."

None of these cases bear any analogy to the case at bar, and indeed it may be safe to assert that no one is to be found in which the representations are held not to be actionable, that the decision will not, on examination, be found to rest on some ground not applicable to this case.

If, however, this case is considered one for the application of the doctrine that the party suffering the imposition is without remedy, if he neglect to give attention to the means of knowledge accessible to him, the utmost limit to which the principle has been carried even in those cases when the maxim, *caveat emptor*, applies, is to require him to give reasonable and proper attention to such means as may be supposed to be within the reach of his observation and judgment.. He is not to exhaust all the sources of information, but to give due attention to those to overlook or disregard which would be negligence and indiscretion.

Judged by this rule he would not seem to have been guilty of such carelessness or inattention, that he should be left without indemnity against the fraud practiced upon him. Extreme caution might, perhaps, have prompted him to deny the favor solicited, until he had proceeded to make inquiries of Holcomb himself, and of the attorneys who entrusted their business to him. The objection that the plaintiff did not, by practising this caution, learn the falsehood that had been told him, and so protect himself against it by refusing to give the release, is not entitled to great favor, coming as it does from Montgomery and his co-defendant, who, in making it, are seeking to avail themselves of the fruits of his fraud. It is not the exercise of caution which the law in this respect requires ; it is only the absence of negligence ; of careless indifference and inattention ; of that indiscretion in trusting to the representations which may be designated a " foolish credulity."

Besides, if the plaintiff was bound to resort to other sources of information, before giving credit to the representations of Montgomery, the use of any artifice or device, calculated and designed to mislead, inducing the plaintiff to forego further inquiry, would be sufficient to justify him in refraining ; and the statement of Montgomery, that he had made inquiries of the attorneys relative to Holcomb's affairs, and had learned the facts to be as represented, may properly be considered of that character. This was well calculated to lull suspicion and induce the belief that further inquiry was unnecessary.

Upon any view that can be taken of this point in the case, we entertain no doubt that the motion for a nonsuit on this ground was properly refused.

Another ground upon which the nonsuit was moved is, that no misrepresentation made to the sheriff upon the subject of the liabilities of his sureties, can be considered in law as a fraud upon him, because he is presumed to know at all times their official proceedings and situation, and is not at liberty to claim that he has been imposed upon by misrepresentations relative to their official doings.

The official acts of the deputy are the acts of the sheriff, in the sense that he is responsible for them as his, without notice. To this extent they may be said to have identity. The positions here taken push this theoretical idea of their identity, in the official proceedings of the deputy, to the extent of an actual identity of knowledge as to all those proceedings. It is possible, perhaps, that a case might occur when sound principles of public policy would forbid that he should be permitted to allege that he had been imposed upon through his want of knowledge as to the official doings of one of his deputies ; as where, for instance, to allege such want of information would be to charge himself with a breach or neglect of duty, if such a case can be conceived. But in such case he could properly be held only to know such facts as could have been learned by him in the exercise of due diligence, and by proper inquiry. We think the doctrine would be quite too severe, that he is not to be at liberty to claim that he has been made the victim of a fraud, because he is bound to know all that may be done or neglected by his deputies in their official capacity upon the instant of its occurrence. No sound reason can be perceived for holding such a doctrine in this case. If it were to be seen that practical mischief must result from holding that he is at liberty to allege his want of information on the subject of the official doings of his deputies, the principles of public policy and convenience might require that he should not be permitted so to allege ; but the fanciful idea of the identity of the sheriff and his deputies furnishes no ground for main-

taining such doctrine, when its only result is to leave him without indemnity for a fraud practiced upon him.

It is also moved to set aside the verdict, for error in the instructions of the court to the jury. It is contended by the defendants that the instructions were, in substance, that if the jury should find either that the plaintiff relied upon the representations, in the sense of believing and confiding in them as true, or that he relied upon them in the sense of trusting to them as grounds upon which a legal remedy might be had, in case he should find himself imposed upon by falsehood, in either case they should find for the plaintiff. It is not claimed that the jury were so instructed in explicit terms, but that the instructions, as expressed, admit of this construction, and that the jury may have thus understood them. If there be ambiguity in the language used by the court in their instructions, still the verdict will not be set aside, if it appears that the jury were not misled. *Hannum* v. *Belchertown*, 19 Pick. 311 ; *Raymon* v. *Nye*, 5 Met. 151 ; *Fitz* v. *Boston*, 4 Cush. 365.

Taking the whole of the instructions together, and considering them in reference to the facts in the case, it is very clear that they must have been understood as requiring them to find that the plaintiff relied upon and confided in the representations as true. They were told they must find that the plaintiff, " confiding in them and believing them to be true, or not having reason to suppose or believe them to be false, was influenced by them to give the release ;" and again, that they must find that the plaintiff " relied upon them, believing them to be true, or not having reason to suppose or believe them to be false, and was induced by them to give the release." It is difficult to conceive how the jury, when told that the plaintiff must be found, upon the evidence, to have " confided in " the representations, and to have " relied upon " them, so as to be influenced and induced by them to give the release, could have understood that the court, by the alternative proposition used in connection with those expressions, namely, " believing them to be true, or not having reason to suppose or believe them to be false," intended any thing more or

less than that they must find that the plaintiff trusted to them as true, and was deceived. Considering the charge in its whole drift, and in connection with the facts as reported in the case, no other meaning can be derived from it than that the plaintiff must be found to have confided in, relied upon, and trusted to, the representations as true, as being a statement of facts. No question would seem to have been suggested, in the progress of the trial, whether in fact the conduct of the plaintiff in giving the release was to be explained, on the ground that he trusted to the representations as furnishing ground for a remedy at law, if they should turn out to be false, or upon the ground that he confided in them as true. A question of this nature, approaching somewhat to the character of a metaphysical subtlety, would hardly be expected to arise in the minds of the jury without the help of a suggestion from counsel, or a more distinct enunciation of it by the court. The only part of the charge in which it is claimed the distinction is suggested, is that just quoted. Considering it to be an alternative proposition of the form suggested in the argument, still the latter branch cannot be considered as negativing the former, excluding the idea of belief contained in the former. To assert that one " confides in and relies upon" a statement, " not having reason to suppose or believe it to be false," imports the highest degree of belief; quite as much so as to assert that he " confides in and relies upon it, believing it to be true." The jury, therefore, must have understood the latter branch, not as an alternative proposition, excluding the idea of belief contained in the former, but as a corrected form of expression, substituted in place of the former, and as intended by the judge to bring distinctly before the minds of the jury, which the former did not, the legal principle applicable to cases of this character, that the confidence placed by the party imposed upon in the representation by which he was deceived, must not be the result of a weak credulity, leading him to believe the statements, when he had reason to suppose that they were false.

The result to which we have thus arrived, upon all the points

in this part of the case, is, that there must be judgment upon the verdict.

But a further question arises : by what principles are the damages in this case to be assessed ?   The judgment is to be for the whole penalty in the bond, but execution is to issue only for the damages which the plaintiff has sustained.   Revised Stat., chap. 190, § 9, p. 384.

The damages, however, are not to be limited to such as had accrued at the commencement of this suit, but are to include all that may have been incurred down to the time of judgment. *Waldo* v. *Fobes & al.*, 1 Mass. 10.   The remedy to the plaintiff for damages subsequently accruing, is by scire facias on the judgment for further execution.   Revised Stat., p. 384, § 10. And the court will not drive the plaintiff to sue out a scire facias for damages which, having already accrued, may be included in the execution now to be awarded, although such damages have accrued since the commencement of the suit.

The bond in this case is one of indemnity, including within its terms " all loss, damages and costs," that may happen to the plaintiff by reason of the acts or neglects of Holcomb, in the office of deputy sheriff. Various suits have been brought against the plaintiff on account of the defaults of Holcomb, in which judgments have been rendered against him.   Some of these judgments have been satisfied and discharged by the plaintiff himself, and others by the sureties upon his official bond to the county.   In the case of the former, no doubt arises that the amount paid upon the judgments is to be reckoned, with interest, from the time of the payments, and included in the damages. In reference to the judgments paid by the sureties of the plaintiff, some doubt has arisen whether the amount so paid can be considered as paid by the plaintiff, and thus constitute damages arising to him.   It does not appear that the money thus paid by the sureties has been reimbursed to them by the plaintiff, and if he should be permitted to recover the amount in this case, it may possibly never be recovered of him by the sureties, to whom in equity it belongs.   But, notwithstanding this objection, we

are of opinion that it is to be included in the award of damages, as though paid by the plaintiff himself. It is money paid at his request, and upon a promise by him to repay it ; the law implying such request and promise from the relation of principal and surety. For this purpose it is to be considered as his money, procured by him upon this implied promise to repay it, no less than if procured for the same purpose as a loan upon his promissory note to the sureties. And it can make no difference to these defendants whether it is so considered, and is included in the *damages* now to be awarded, or whether it be recovered upon a scire facias for another execution at the next, or some subsequent term of the court, after proceedings may have been had between the plaintiff and his sureties to make the money equitably his.

It is, perhaps, not entirely clear that he may not recover upon judgment rendered against him for the default of his deputy, without payment either by himself or his sureties. Such was the view which it would seem was taken by the court in the case of *Carman* v. *Noble*, 9 Barr. 366, in which the parties stood, in some respects, in much the same relation as the parties in this case. The plaintiff in that case brought his action upon the agreement of the defendant to indemnify him against " debt or damage," on account of a liability incurred by him as surety ; and a judgment having been recovered against him on account of the liability, it was held that he was entitled to recover without payment of the judgment, it being said by the court that they would take care, on application made to them for that purpose, that the money recovered should be applied to the benefit of the creditor to whom it equitably belonged.

The court may interpose in the same manner in this case, to protect the equitable claim of the sureties to the money recovered, if it should be made to appear necessary, by such proceedings as are not unusual in our practice in the case of a lien, or other equitable claim upon the judgment.

Upon the principles recognized in the cases of *French* v. *Parish*, 14 N. H. 496, and *Robinson & al.* v. *Hill*, 15 N. H. 477,

it is very clear that the reasonable expenses incurred by the plaintiff, in the defence of the actions against him for Holcomb's defaults, including counsel fees and personal services, should be allowed in assessing the damages.

In the case last cited, *Robinson & al.* v. *Hill*, it was held that the necessary expenses incurred in obtaining possession of personal property, mortgaged to secure the mortgagee against liability on a bond, were proper charges upon the mortgaged property, under the condition in the mortgage to indemnify against " trouble and expense" on account of signing the bond, on the ground that they were necessary expenses, incurred in consequence of the neglect of the mortgagor, and without which the security would have been unavailing. The necessary expenses incurred by the plaintiff in prosecuting this suit, beyond the taxable costs which may be rendered in the judgment as costs, and the personal services of the plaintiff, so far as they were reasonable and proper, stand upon the same ground. They result from the neglect of the defendants to furnish the indemnity promised ; they are clearly within the terms of the promise, as expressed in the condition of the bond, and without them the remedy on the bond would have been unavailing. We are, therefore, of opinion that these expenses and services should also be included in the assessment of the damages. But the costs recovered against the plaintiff and his sureties in the suits upon his official bond to the county, and the expenses incurred in and about those suits, are not to be so included. It was the duty of the plaintiff to have paid up when judgment was rendered against him for the default of Holcomb, without waiting for a suit on his official bond. That was a matter entirely personal to the plaintiff, which resulted from his own neglect, and cannot be set down to the account of Holcomb, in any view that can be taken of it. Upon these principles, the amount of damages is to be ascertained by the appointment of an auditor, or in some other proper mode in the common pleas, and execution to issue accordingly.